IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

**UNITED STATES OF AMERICA**

v.  CRIMINAL NO. 2:10-00160

**JONATHAN STEVEN DEUTSCH**

**MEMORANDUM OF LAW IN SUPPORT OF RESPONSE
TO COURT ORDER TO PRODUCE LOAN DOCUMENTS
RELATED TO COUNT THIRTY OF THE SECOND SUPERSEDING INDICTMENT**

Comes now the United States of America by Assistant United States Attorney, Thomas C. Ryan, and files this Memorandum of Law to address issues raised by the Court at the March 5, 2012 status conference regarding the legal and factual basis for the plea entered by Defendant on May 12, 2011 to a violation of 18 U.S.C. § 1014.

**Factual Background**

**A.  The H/H Trust Line of Credit**

Defendant was the former Executive Secretary for the West Virginia Heavy and Highway Construction Industry Fund ("H/H Trust"). The H/H Trust Agreement required the signature and approval of two trustees to obtain a loan.

In August 2004, Defendant obtained a $120,000 line of credit ("LOC") from SunTrust Bank ("SunTrust") in the name of the H/H Trust without obtaining approval from any other trustee. See Exhibit A at GOV-STB3-0144-0145. Defendant executed a

1

security agreement collateralizing all of the H/H Trust's assets.  Ex. A at GOV-STB3-0021-0027.  Defendant drew down practically the entire balance almost immediately.[1]  Ex. B at MOI-0155.  In preparation of the H/H Trust 2004 tax return, however, Defendant misrepresented to the accountant, Steven Haney ("Haney"), that the H/H Trust only had $7,500 in outstanding liabilities.  Ex. D at GJ-JSH-0446.

In October 2005, Defendant signed an annual renewal for the LOC, which reaffirmed that the execution of the LOC did not violate the H/H Trust Agreement.  Ex. A at GOV-STB3-0151-156.[2] In preparation of the H/H Trust 2005 tax returns, Defendant misrepresented to Haney that the LOC was in his name personally and not a debt of the H/H Trust.  Ex. E at GJ-JSH-0506. Defendant further misrepresented to Haney that only half of the then-outstanding $97,000 LOC balance was the responsibility of the H/H Trust.  Id.  Accordingly, Haney prepared a tax return that Defendant knew falsely understated the H/H Trust's LOC payment obligations.  Id.

---

[1] Although not necessary for the plea, Defendant is aware that the government was ready to prove at trial that he used the proceeds from the LOC to further his overarching fraudulent scheme.

[2] Defendant affirmatively misrepresented that "[t]he execution, delivery, or performance of this Note and the consummation of the transaction contemplated will not, with or without the giving of notice or the lapse of time . . . (b) violate Borrower's charters or bylaws, as applicable."  GOV-STB3-0153.

In November 2006, Defendant signed another annual renewal falsely reaffirming that his execution of the LOC was in conformance with the H/H Trust Agreement.  Ex. A at GOV-STB3-0172-177.[3]  In February 2007, Defendant falsely told Haney that the LOC had been paid in full, which was in fact not true.  Ex. F at GJ-JSH-0056.

In the spring of 2007, the H/H Trust Board learned of Defendant's fraud against the organization.  See Second Superseding Indictment, ¶¶ 1-8.  On May 16, 2007, the H/H Trust advised SunTrust that it had terminated its relationship with Defendant.  Ex. A at GOV-STB3-0336.  On May 19, 2007, Defendant told Haney for the first time that the LOC was in the name of the H/H Trust and directed Haney to amend the draft 2006 H/H Trust tax return to reflect an outstanding debt of $117,000 on the LOC. Ex. F at GJ-JSH-0563.  SunTrust ultimately wrote off the entire balance.  Ex. B at MOI-0155.

In the summer of 2005, SunTrust discovered that a former loan officer had forged certain documents in the LOC file, including an August 19, 2004 corporate resolution.  Ex. B at MOI-0154-0155; Ex. A at GOV-STB3-0028.  At that time, Defendant stated that the document was not authentic, but refused to sign

---

[3]  The 2006 renewal contains the same "Representations and Warranties" language as the 2005 renewal.  GOV-STB3-0174.

3

an affidavit swearing to same or otherwise disavow its force and effect. Id.

Further, notwithstanding the loan officer's admission, the LOC file also contained a similar May 19, 2001 corporate resolution. Ex. A at GOV-STB3-0148. This document is countersigned by the purported treasurer, his wife, authorizing Defendant to borrow funds on behalf of the H/H Trust. Id. Defendant's wife was never the H/H Trust treasurer or otherwise elected an officer.

**B. The Plea**

Faced with a May 19, 2011 trial date, Defendant proposed to the government that he plead guilty to Count Thirty of the Second Superseding Indictment in exchange for dismissal of the remaining counts and the forfeiture provision. See Docket Nos. 87, 96. The government agreed, but insisted before going forward that Defendant admit, *at a minimum*, in writing that he purposefully did not inform SunTrust that he had approval to obtain the LOC because he, in fact, did not have authorization.

For the purpose of establishing a factual basis for the plea, Defendant agreed in writing that he knowingly failed to disclose to SunTrust that he lacked authority to obtain the LOC: "[a]s part of the loan application process and **for the purpose of ensuring that the Bank would approve the loan**, Mr. Deutsch failed to advise the Bank that he did not have authority to

4

borrow funds in the name of [the H/H Trust]." (emphasis added).[4] Id. at Exhibit A.

On May 12, 2011, Defendant pled guilty to Count Thirty and both parties agreed that the Court could use the stipulation of facts as a factual basis for the plea. See May 12, 2011 Plea Hearing Transcript ("Tr.") at p. 11. Defendant agreed with all of the facts contained in the stipulation of facts. Id.

The Court advised Defendant of the elements of the offense. Tr. at pp. 21-22. Relying upon the authority discussed in United States v. Sturman, 1998 WL 524906 (S.D.N.Y. Aug. 20, 1998), the Court advised Defendant that a "false statement" could be an "omission" for the purpose of a § 1014 charge. Id. Defendant did not object. Tr. at p. 22.

The Court inquired of Defendant further regarding the factual basis, specifically whether Defendant knowingly failed to disclose to SunTrust that he lacked authority to borrow $120,000 on behalf of the organization. Tr. at pp. 30-34. Defense counsel requested a break, after which he inquired of Defendant directly on the record. Tr. at pp. 35-37. In summation, his lawyer elicited the following:

---

[4] As government counsel indicated at the March 5, 2012 status conference, the government would not have presented the plea without Defendant's express agreement to this language. Indeed, Defendant stated under oath that "this was an [sic] negotiated agreement to which I will be a party to voluntarily." Tr. at p. 15.

> Mr. Glaser: And you knowingly omitted getting the two signatures and telling the bank that you had gotten those two signatures?
>
> Defendant: That is correct, I did.

Tr. at p. 37.

The Court accepted Defendant's guilty plea and deferred finding a factual basis until sentencing. Tr. at pp. 37-38. The Defendant further stated that, "I am acting under my own free will, understanding that the government is dropping 31 counts that they have brought in and pursued for over four years against me and this will bring an end to all of this. Yes, I am making that free will decision as opposed to going to court and having to fight for – defend myself against everything." Tr. at p. 39.

### C. Sentencing

The PSR was prepared. Defendant provided the United States Probation Officer the following signed written statement:

> Specifically, on or about August 19, 2004, I applied for a $120,000 commercial loan in the name of West Virginia Heavy & Highway Construction Industry Fund ("WVHH") from National Bank of Commerce (the "Bank"), now known as SunTrust Bank, in Charleston, West Virginia. I knowingly applied for the commercial loan without obtaining the approval of at least two of the WVHH trustees, as required by Article V, Section 13 of the WVHH Trust Agreement. I also failed to advise the Bank that I did not have authority to borrow funds in the name of WVHH without the approval of at least two of the WVHH trustees. I take full responsibility for obtaining the commercial loan without proper approval, and ***I will be glad to supplement this response in***

6

*order to more fully explain my improper and illegal actions if necessary*.

See PSR, ¶ 43 (emphasis added).  Defendant filed two objections: (i) opposing an obstruction of justice enhancement and (ii) contesting the restitution amount.

After several continuances, the sentencing began on January 5, 2012.  See Docket No. 107.  The Court heard the government's evidence related to the obstruction enhancement.  In response, Defendant waived attorney-client privilege and called his civil attorney, Michael Chaney.  See Docket No. 108.  The Court continued the hearing to allow Mr. Chaney to produce documents relevant to the government's cross examination.  The documents unquestionably undermine the basis of Defendant's objection, which would have become apparent when cross examination resumed.

The hearing was set to resume on March 5, 2012.  See Docket No. 111.  On February 29, 2012, the Court received an *ex parte* letter from Defendant.  See Docket No. 116.  Defense counsel moved to withdraw.  See Docket Nos. 117, 118 and 120.  The Court converted the sentencing hearing to a status conference. See Docket No. 122.

After hearing from the Defendant and his lawyers *in camera*, the Court took the motions to withdraw under advisement. The Court indicated that it wanted to inquire further of the factual and legal basis for Defendant's guilty plea.  The Court ordered

7

that the United States provide a copy of the loan application submitted to the bank and any supporting documentation submitted in support of the loan application.  See Docket No. 124.

### Relevant Law

The Fourth Circuit has not addressed the issue, but sister circuits have consistently held that a knowing omission or failure to disclose information may constitute a "false statement" for the purpose of a § 1014 violation.  The seminal § 1014 case from the Eighth Circuit, United States v. Wells, 63 F.3d 745 (8th Cir. 1995), vacated on other grounds, 519 U.S. 482 (1997), on remand, 127 F.3d 739, stands for the proposition that a borrower's withholding of information with the intent to influence the bank's actions is sufficient for a § 1014 conviction.  127 F.3d at 744.[5]  On the initial appeal, the Court held that "omissions may constitute a false statement where honest statements would otherwise be made."  63 F.3d at 751-52.

Further, the Fifth Circuit has repeatedly held favorably on this issue.  See United States v. Doke, 171 F.3d 240, 246 (5th

---

[5] In Wells, the Supreme Court held that "materiality" was not an element of a § 1014 offense.  Rather, the government need only prove that a false statement, or in Wells' (and Defendant's) case, a concealment of a fact was done with the intent to influence the bank's lending decision.  519 U.S. at 486.

8

Cir. 1999).[6]  The case of United States v. Matthews, 31 F.App'x 838 at *10-12 (5th Cir. 2002), is analogous to Defendant's plea. In that case, two business partners were convicted of a § 1014 violation because, although not asked, they failed to disclose benefits that they had provided one of the bank's loan officers when they applied for a loan. Id. at *3-4.  The government charged the defendants with a § 1014 violation, alleging that the intentional concealment of the benefits provided to the bank officer was a "false statement intending to influence the bank's lending activity." Id. at *10.  The defendants argued that the omission could not constitute a "false statement," because the duty to disclose rested with the loan officer per the bank's policy, and not the defendants.  Id. The Fifth Circuit affirmed the convictions and held that "an intentional omission of material fact can constitute a false statement if made for the purpose of influencing a federally-insured bank's lending activities." Id. at *12 (citing Doke, Dupre and Waldron).

United States v. Briggs, 965 F.2d 10 (5th Cir. 1992) is also instructive.  Here, the Fifth Circuit held that a defendant's failure to disclose lack of authority to initiate

---

[6] See also United States v. Dupre, 117 F.3d 810, 819 (5th Cir. 1997); United States v. Waldron, 53 F.3d 680, 682 n.4 (5th Cir. 1995); vacated on other grounds, 516 U.S. 928; United States v. Trice, 823 F.2d 80, 86 (5th Cir. 1987)("We have also held that a false statement or report for purposes of section 1014 can include the failure to disclose material information needed to avoid deception in connection with a loan transaction.").

wire transfers from her employer's account was a sufficient legal basis for a violation of 18 U.S.C. § 1344, bank fraud, although she "never made any overt misrepresentations, false promises, or false statements to any financial institution." Id. at 11. The Court held that "an implicit misrepresentation by [a defendant] that she was acting under her employer's authority would be sufficient to establish the misrepresentation element of § 1344(a)(2)." Id. at 12.

Finally, the Tenth Circuit precedent also lends support for a legal basis for Defendant's plea. In United States v. Copus, 110 F.3d 1529 (10th Cir. 1997), the court affirmed a § 1014 conviction based on a cattle rancher's misrepresentation regarding his ownership interest in his herd during a collateral inspection undertaken by a loan officer. Although the cattle rancher never expressly told the loan officer that he outright owned all of the cattle, the Tenth Circuit found that he did indeed make a "false statement" under § 1014 because he failed to disclose that a business partner owned a portion of the herd. Notably, the Tenth Circuit found that in the context of a § 1014 violation, "[a] representation has long been held to consist of words, made orally or in writing, or *other conduct manifesting to another the existence of a material present or past fact*." Id. at 1535 (emphasis added).

10

Based on the foregoing, the Court should find that a borrower seeking a loan on behalf of his employer or company who knowingly omits or fails to disclose that he lacks authority to obtain the loan may be guilty of a § 1014 violation.

## Discussion

The Court should find a sufficient factual and legal basis for Defendant's plea. Defendant does not have to agree with all of the facts that the government could prove at trial. Rather, as in this case, the law makes clear that Defendant need only admit that he failed to disclose to SunTrust that he lacked H/H Trust board approval to apply for the LOC with the intent to influence the bank's lending decision. See Wells, 63 F.3d at 751-52; Matthews, 31 F.App'x at *12; Copus 110 F.3d at 1535. Defendant did agree with that fact not only in writing, but also verbally under oath at the plea hearing. Tr. 37.

In his *ex parte* letter, Defendant appears compelled to advise the Court of other circumstances surrounding the LOC. For the purposes of his plea, none of his claims are relevant. Defendant admitted that he has no defense to the charge. Tr. at pp. 40-41. He was advised of the elements and still pled guilty. Tr. at pp. 21-22; 38.

The Fourth Circuit created the Moore framework to deal with backpedaling defendants. On the eve of trial, Defendant – not the government – sought to minimize his imprisonment exposure

11

and plead guilty to Count Thirty.[7] Defendant undoubtedly realized – especially once a portion of the Chaney file was produced to the government – that he could not escape additional punishment for deceitfully falsifying H/H Trust board meeting minutes. Faced with the finality of sentencing, Defendant sent his *ex parte* letter more than ten months after he pled guilty, clearly in an attempt to sabotage the entire court proceedings.

Five of the six Moore factors unquestionably weigh in favor of the government. The only possible factor tilted in his favor requires that he "credibly assert his legal innocence," which has not occurred. Defendant only conditionally asks the Court to find that his "omission" cannot be a legal basis for a § 1014 violation. As set forth above, the case law stoutly proves otherwise.

Accordingly, if Defendant does in fact want to withdraw from his guilty plea, the Court should order him to do so unequivocally and unconditionally in writing. If Defendant elects to do so, the Court can then analyze the Moore factors, which the government asserts still weigh in favor of denying any such motion to withdraw. If not, based on the foregoing,

---

[7] No one questions the benefit of the bargain for Defendant. By pleading guilty, Defendant lowered his guideline exposure four levels, see PSR ¶¶ 57-64, 90, and avoided a significant forfeiture order.

12

Defendant's plea is well supported by sufficient legal and factual basis and should be accepted.

## Conclusion

The Court should find that there is a sufficient factual and legal basis for Defendant's plea, accept the plea agreement and reschedule the conclusion of Defendant's sentencing.

Respectfully submitted,

R. BOOTH GOODWIN II
United States Attorney

By:

/s/ *Thomas C. Ryan*
THOMAS C. RYAN
Assistant United States Attorney
WV Bar No. 9883
300 Virginia Street, East
Room 4000
Charleston, WV 25301
Telephone: 304-345-2200
Fax: 304-347-5104
Email: thomas.ryan@usdoj.gov

CERTIFICATE OF SERVICE

I certify that the "MEMORANDUM OF LAW IN SUPPORT OF RESPONSE TO COURT ORDER TO PRODUCE LOAN DOCUMENTS RELATED TO COUNT THIRTY OF THE SECOND SUPERSEDING INDICTMENT" has been electronically filed and service has been made on opposing counsel by virtue of such electronic filing today, March 13, 2012 to:

>Richard S. Glaser, Jr.
>rickglaser@parkerpoe.com
>
>James C. Lesnett, Jr.
>jamielesnett@parkerpoe.com
>
>Michael W. Carey
>mwcarey@csdlawfirm.com
>
>Rodney A. Smith
>rsmith@baileyglasser.com

>/s/ *Thomas C. Ryan*
>THOMAS C. RYAN
>Assistant United States Attorney
>WV Bar No. 9883
>300 Virginia Street, East
>Room 4000
>Charleston, WV 25301
>Telephone: 304-345-2200
>Fax: 304-347-5104
>Email: thomas.ryan@usdoj.gov